IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| GOD'S LITTLE GIFT, INC. d/b/a HELIUM & BALLOONS ACROSS AMERICA (also known as HABAA) and GARY PAGE,<br><br>        **Plaintiffs,**<br><br>   v.<br><br>**AIRGAS, INC.**,<br><br>        **Defendant.** | Civil Action No: 3:17-cv-00004 |

## ADDENDUM TO STANDING ORDER ON PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION IN CIVIL CASES

      This Addendum memorializes the agreement between Plaintiffs and Defendant (each a "Party" and collectively, the "Parties") regarding the production of paper documents ("Documents") and electronically stored information ("ESI") in the above-captioned action (the "Action").

      1.     This Stipulation supplements the Court's Standing Order on Protocol for Discovery of Electronically Stored Information in Civil Cases, entered on May 14, 2007 ("Standing Order"). All provisions of the Standing Order are incorporated herein.

      2.     The Parties acknowledge that, as with all other discovery, ESI is governed by a proportionality standard in order that discovery obligations are consistent with the just, speedy and inexpensive determination and resolution of litigation disputes. Fed. R. Civ. P. 34; Fed. R. Civ. P. 26.

3. The Parties will make reasonable efforts to ensure that all Documents and ESI they produce are legible. If a copy is not legible, the producing Party will provide a legible copy (subject to relevant specific and general objections) within five (5) business days of a request from the receiving Party, or as otherwise mutually agreed by the Parties, provided a legible copy can be made. If no legible copy can be made, then the original will be made available for inspection and copying within ten (10) business days of a request from the receiving Party, or as otherwise mutually agreed by the Parties.

4. In an effort to reach agreement and avoid burdening the Court with discovery disputes, the Parties will meet and confer in advance of the production of documents regarding the parameters of discovery, and attempt to reach agreement on these parameters, including:

   a. the appropriate custodians that are most likely to have relevant, discoverable information;
   b. the relevant ESI to search for each custodian;
   c. the search terms to run against the selected custodians' ESI, with the understanding that the Parties will undertake good-faith efforts to ensure that the search terms utilized are reasonably calculated to return ESI relevant to the case and will not result in the production of voluminous ESI not related to the allegations and defenses in the case;
   d. whether review and production of paper files is necessary for each custodian; and
   e. the date range applicable to the search for each custodian.

5. Subject to the Parties' objections to discovery requests, the Parties will produce the ESI, information and documents uncovered pursuant to the searches agreed-upon as part of this meet-and-confer process. In addition, to the extent any Party identifies additional responsive

ESI, responsive information, or responsive documents, all such non-privileged ESI, information and documents shall be produced, subject to the Parties' objections to discovery requests.

6. The Parties agree that there is no need to collect or search the following ESI:

    a. Voice messages in any form, including without limitation voicemails and voice memos.

    b. Random access memory (RAM) or other ephemeral data.

    c. On-line access data such as temporary internet files, histories, caches, cookies, etc.

    d. Data in Metadata fields that are frequently updated automatically or are easily modified, such as last-modified date, except as specified herein.

    e. Text and instant messages.

    f. Data contained on mobile devices, including but not limited to email, calendar data, and contact data, provided a copy of any potentially relevant data would routinely have also appeared on the computer systems utilized by a Party.

    g. Data contained in disaster recovery systems and backup tapes.

7. The Parties shall produce Documents as single-page TIFF images and corresponding document-level text files with an Opticon .opt load file and Concordance .dat file for the Metadata. The following Metadata shall also be produced, when available: Begin Bates, End Bates, Custodian, Beginning Attachment, End Attachment, Date Created, Message ID, From, To, CC, BCC, Author, Subject, MDHash, and OCR Path. The load file should also indicate whether the Document has been designated "confidential" or "highly confidential" pursuant to the Protective Order in this Action. If a Document does not contain extractable text,

the producing Party shall provide OCR for that Document. The load file should contain a link to the location of the OCR or extracted text.

8. The Parties have no obligation to create or to manually code fields that are not automatically generated by the processing of a Document or that do not exist as part of the original metadata of the Document.

9. The Parties will meet and confer regarding the production of databases and other complex or dynamic files.

10. If any original Document has notes affixed thereto or attachments, the Parties will produce copies of those Documents with the accompanying notes and attachments unless privileged or subject to another valid discovery objection.

11. The Parties shall produce ESI as follows:

   a. **E-mails.** Emails shall be produced as single-page TIFF images and corresponding document-level text files. The images shall be produced with an Opticon .opt load file and a Concordance .dat file for the Metadata (.dat file delimiters should be þ and ¶). E-mail attachments shall be handled according to the provisions below applicable to loose electronic documents. The following Metadata shall be produced for each e-mail: Begin Bates, End Bates, MD5 or SHA-1 hash value, to, from, cc, bcc, date sent, time sent, subject, Conversation Index, number of attachments, begattach, endattach, and custodian. The load file should indicate whether the e-mail has been designated "confidential" or "highly confidential" pursuant to the Stipulated Protective Order in this Action. The load file should contain a link to the location of the OCR or extracted text as well as Native File, if applicable.

b. **Loose Electronic Documents.** Word and other electronic documents shall be produced as single-page TIFF images and corresponding document-level text files with an Opticon .opt load file and Concordance .dat file for the Metadata. Load files shall include the following Metadata: Begin Bates, End Bates, Date Created, MD5 hash value, Author, Extracted Text, Custodian, File Extension, and original file name. The load file should indicate whether the document has been designated "confidential" or "highly confidential" pursuant to the Stipulated Protective Order in this Action. If a document does not contain extractable text, the producing Party shall provide OCR for that document.

c. **Production of ESI in Native Format.** All Excel files shall be produced as Native Files. The presumption is that other files will not be produced in native format, unless the requesting Party shows good cause. Native Files shall be produced with a Bates number. The Native File shall also be produced with a placeholder TIFF image and an Opticon .opt load file and Concordance .dat file for accompanying Metadata and placeholder image links. Load files shall include the following Metadata: Begin Bates, End Bates, Beginning Attachment Bates Number, Ending Attachment Bates Number, Custodian, author, original filename, and MD5 hash value. The load file should also indicate whether the document has been designated "confidential" or "highly confidential" pursuant to the Stipulated Protective Order in this Action. The placeholder image should be labeled with the Bates number and any confidentiality designation.

12. If any original ESI has attachments, the Parties will produce copies of that ESI with the attachments unless privileged or subject to another valid discovery objection.

13. The Parties will make reasonable attempts so that ESI will be de-duped globally, provided however, that only exact duplicates (based on MD5 or SHA-1 hash values) may be omitted from production. Where such de-duping occurs, all custodians of such ESI not represented in the produced document shall be noted in a separate custodian field ("All Custodians"), as well as all other Metadata described above. The Parties may use email threading software to help cull duplicative email communications from the collection.

14. Each page of all images produced (whether Documents or ESI) must be clearly labeled with an indelible, legible, unique Bates number identifier electronically "burned" onto the image. Reasonable steps shall be taken to place the Bates number at a location that does not obscure any information from the source document. In addition, to the extent any image or file is to be marked "confidential" or "highly confidential," each page of the image or file to be so marked shall include the appropriate confidentiality designation. There shall be no other legend or stamp placed on the document image, except to identify redaction due to privilege claims.

15. Before each Bates number, Plaintiffs shall affix the prefix "HABAA_" and Defendant shall affix the prefix "AIRGAS_".

16. Image file names must be unique and must correspond with the Bates number imprinted on the image. For example, for a Document with the Bates number "B0000001," the image will bear the name "B0000001.tif."

17. If Native Files are produced, the Party producing such Native File shall include a single-image placeholder TIFF with a single Bates number on the image itself. The Native File shall have, in a separate metadata field, the original filename of the Native File, and the Native File will be linked to the placeholder TIFF and the Bates number assigned thereto. There shall be no Bates numbering of Native Files at the page level.

18. The Parties shall prepare privilege logs listing each responsive document identified pursuant to the procedures outlined above but withheld on the basis of attorney-client, work product, or other privilege. For emails, the log should list to, from, cc, bcc, date sent, and the basis for the claim of privilege. For Documents and ESI other than emails, the log should list author, date, and the basis for the claim of privilege.

19. The Parties agree that they need not include on any privilege log communications with counsel about the prosecution or defense of this lawsuit.

20. The Parties agree to the following regarding ESI, information or documents that are protected by any legally-recognized privilege and are inadvertently produced:

   a. In the event that a Party discovers that it has received potentially privileged or protected ESI, information, or documents, it will bring that fact to the attention of the Producing Party immediately upon discovery and will immediately refrain from further accessing and/or reviewing such ESI, information or documents.

   b. If a Party discovers that it has inadvertently produced potentially privileged or protected ESI, information, or documents, it will immediately notify the receiving Party in writing. Upon receiving such notification, the receiving Party will immediately refrain from further accessing and/or reviewing such ESI, information, or documents.

   c. If the Parties disagree on whether certain ESI, information, or documents is privileged, the parties will first meet and confer in an attempt to resolve the issue. If the Parties are unable to resolve the issue, the Party objecting to the privilege designation may elect to bring the matter to the attention of the Court. Pending

resolution of the issue by the Court, the objecting Party shall not access, review, or use the disputed ESI, information, or documents.

d.  Inclusion of any privileged ESI, information, or document in a production shall not result in the waiver of any privilege or protection associated with such document, nor result in a subject matter waiver of any kind in this or any other proceeding.

**SO ORDERED**.

Signed: April 24, 2017

David S. Cayer
United States Magistrate Judge

Dated: April 24, 2017  Respectfully submitted,

| | |
|---|---|
| */s/ Donald M. Brown, Jr. (w/permission)* | */s/ Gregory L. Skidmore* |
| Donald M. Brown, Jr.<br>    N.C. Bar No. 14178<br>    brownattycalendar@gmail.com<br><br>BROWN & ASSOCIATES, PLLC<br>Park South Professional Center<br>10440 Park Road, Suite 200<br>Charlotte, NC  28210<br>Telephone:  (704) 542-2525<br>Facsimile:  (704) 541-4751<br><br>*Attorney for Plaintiffs* | David C. Wright III<br>    N.C. Bar No. 11161<br>    dwright@robinsonbradshaw.com<br>Gregory L. Skidmore<br>    N.C. Bar No. 35571<br>    gskidmore@robinsonbrashaw.com<br><br>ROBINSON BRADSHAW & HINSON, P.A.<br>101 North Tryon Street, Suite 1900<br>Charlotte, North Carolina  28246<br>Telephone:  (704) 377-2536<br>Facsimile:   (704) 378-4000<br><br>*Attorneys for Defendant Airgas, Inc.* |