UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00004-FDW-DSC

| | |
|---|---|
| GOD'S LITTLE GIFT, INC., doing business as HELIUM & BALLOONS ACROSS AMERICA (also known as "HABAA"), and GARY PAGE,<br><br>   Plaintiffs,<br><br>vs.<br><br>AIRGAS, INC.<br><br>   Defendant. | ORDER |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. 28), Defendant's Answer to Amended Complaint (Doc. No. 30), Defendant's Request for a Preliminary Hearing (Doc. No. 31), Plaintiffs' Response to the Motion to Dismiss (Doc. No. 32), Plaintiffs' Response to Defendant's Request for a Preliminary Hearing (Doc. No. 35), and Defendant's Reply (Doc. No. 36). Upon review by the Court, for the reasons stated below, Defendant's Motion to Dismiss Plaintiffs Amended Complaint (Doc. No. 28) pursuant to Rule 12(b)(6) is DENIED. Defendant's Request for a Preliminary Hearing is DENIED.

**I. BACKGROUND**

This actions arises from the business dealings between Plaintiffs, God's Little Gift, Inc., doing business as Helium and Balloons Across America ("HBAA") and its founder, Gary Page, and Defendant, Airgas, Inc. HBAA, who is in the business of providing helium and balloons to grocery stores and various retail outlets, began its business relationship with Airgas, a helium

1

supplier, at an unspecified date between 1982 and 1983. (Doc. No. 27, p. 6-8). The parties continued this relationship until 2015. Id. During the course of their relationship Airgas acted as HABAA's principle supplier of helium. Id. at 10.

Plaintiffs allege that as HABAA grew from humble beginnings to national success, Airgas began a "systematic plan" to "take HABAA's business for itself." Id. at 9. Between 2009 and 2015 Airgas made several unsuccessful attempts to purchase HABAA. Id. at 31. Plaintiffs allege, however, that these purchase attempts were a sham, and Airgas merely used the negotiations to obtain HABAA's confidential information. Id. Airgas then, allegedly, used this confidential information to siphon off HABAA's business. Id. Additionally, Plaintiffs allege Airgas engaged in other deceptive conduct, such as fabricating a "helium shortage" narrative in order to justify exponentially increasing the rate it charged HABAA for helium, as part of its systemic plan to put HABAA out of business. Id. at 18.

Plaintiffs filed this present action against Defendant in Mecklenburg County Superior Court on Nov. 30, 2016. (Doc. No. 1). It was subsequently removed to this Court on January 4, 2017. Id. Plaintiffs filed their Amended Complaint on May 11, 2017, arguing Defendant be found liable to Plaintiffs under the following claims of relief: (1) Misappropriation of Trade Secrets under N.C.G.S. § 66-152; (2) Misappropriation of Trade Secrets under 18 U.S.C. § 1836; (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"); (4) Tortious Interference with Contract; and (5) Tortious Interference with Prospective Economic Advantage. (Doc. No. 27). On May 25, 2017, Defendant filed a Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6). (Doc. No. 28).

## II. STANDARD OF REVIEW

In order to survive a 12(b)(6) motion to dismiss, a complaint must contain more than mere legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must plead facts sufficient to "raise a right to relief above the speculative level" and to demonstrate that the claim is "plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The claim is facially plausible when the factual content of the complaint allows the court to "draw the reasonable inference that the defendant is liable for the misconduct." Id. at 556.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[ ] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief 'will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore it should be dismissed. Id.

3

(quoting Fed.R.Civ.P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id.

### III. ANALYSIS

**A. Misappropriation of Trade Secrets: 18 U.S.C. § 1836 & N.C.G.S. § 66-152**

Defendant argues that Plaintiffs' state and federal claims for misappropriation of trade secrets should fail for four reasons; none of which this Court finds persuasive.

First, Defendant argues that the federal claim fails because the Defend Trade Secrets Act ("DTSA") applies only to misappropriation occurring on or after its date of enactment, May 11, 2016. (Doc. No. 29, p. 15). However, while this may be the case under an "acquisition" theory of liability, under a "disclosure" theory of liability a DTSA claim is actionable when the disclosure or use continued to occur after the effective date. Sleekez, LLC v. Horton, 2017 WL 1906957 at *5 (D. Mont. Apr. 21, 2017). Here, Plaintiffs allege that Defendant's misappropriation continued "as part of an unbroken course of conduct up through and including August of 2016." (Doc. No. 27, p. 37). The DTSA, therefore, would apply to Plaintiffs' claim given the facts alleged.

Second, as to both claims, Defendant argues that the information at issue is not a trade secret because Plaintiffs allege no "reasonable efforts" taken to maintain its secrecy. (Doc. No. 29, p. 15). 18 USC § 1839(3)(a) states that the owner of a trade secret must take "reasonable measures to keep such information secret." Similarly, N.C.G.S § 66-152(3)(b) states that a trade secret is the subject of "efforts that are reasonable under the circumstances to maintain its secrecy." North Carolina courts have held that the reasonableness of a plaintiff's efforts to maintain secrecy are "necessarily fact dependent" and the court must "closely examine the circumstances surrounding the trade secret." Artistic Southern Inc. v. Lund, 2015 WL 8476587, *12 (N.C.Super.Ct. Dec. 9,

2015) (quoting Koch Measurement Devices, Inc. v. Armke, 2015 WL 2092649 (N.C.Super.Ct. May 1 2015)). The Fourth Circuit previously held that a plaintiff, under the South Carolina Trade Secrets Act, failed to take reasonable efforts to maintain the confidentiality of his supposed secrets when he shared that information with third parties without the protection of a confidentiality agreement. See Hill Holliday Connors Cosmopulos, Inc. v. Greenfield, 433 Fed. Appx. 207, 212 (2011). Here, Plaintiffs allege that HABAA used confidentiality agreements to require Airgas to maintain the secrecy of the information disclosed in the purchase negotiations. (Doc. No. 27, p. 55). Therefore, the Court finds it is plausible that these efforts taken by Plaintiffs to protect its trade secrets could be found reasonable under the circumstances.

Next, as to both claims, Defendant argues that Plaintiffs' allegations are too speculative and lack sufficient specificity in alleging what information was misappropriated and how Defendant used that misappropriated information. (Doc. No. 29, p. 16-17). North Carolina courts have held that general allegations in sweeping and conclusory language, without specifically identifying the trade secrets allegedly misappropriated, are insufficient to state a claim for misappropriation. Washburn v. Yadkin Valley Bank and Trust Co., 190 N.C. App. 315, 327 (2008). Here, Plaintiffs' complaint does not contain general, sweeping allegations. Rather, Plaintiffs offer twenty-three specifically-identified customer lists allegedly containing confidential information of significant value to HABAA. (Doc. No. 27, p. 61-62). The confidential information in these lists included: the composition of current chains and businesses; the number and location of stores per chain; wholesale prices customers were being charged for helium; helium cylinder pricing for each chain; the contract terms for each chain; etc. Id.

Last, Defendant argues that both claims should be dismissed because they are each barred by a three year statute of limitations. (Doc. No. 29, p. 18). Under both the federal and state statutes,

a trade secrets claim must be commenced within three years after the misappropriation complained of is, or reasonably should have been, discovered. See N.C. Gen. Stat. § 66-157; see also 18 U.S.C. § 1836(d). Despite Defendant's contention that Plaintiffs discovered proof of discriminatory pricing in 2012, Plaintiffs' complaint explicitly alleges that it was not until 2015 that Plaintiffs "knew for the first time that both Mr. Page and HABAA had been the target of unscrupulous and fraudulent market manipulation tactics by Airgas." (Doc. No. 27, p. 49). Therefore, Plaintiffs had three years starting from the date of that realization in 2015 to bring this action. They filed their complaint well within that time constraint.

Therefore, assuming the facts alleged in the Amended Complaint to be true and construing the facts in the light most favorable to the plaintiff, Defendant's motion to dismiss Plaintiffs' first and second claims for relief, alleging misappropriation of trade secrets, is DENIED.

**B. North Carolina Unfair and Deceptive Trade Practices Act: N.C.G.S. § 75-1.1**

N.C.G.S. § 75-1.1(a) states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

Defendant argues that the UDTPA claim should fail because it is merely a "repackaged contract claim." (Doc. No. 36, p. 5). Defendant quotes the Court in Riggs v. Orkin as stating, "North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a tort action and allege [UDTPA claims] out of facts that are properly alleged as a breach of contract claim." Riggs v. Orkin, 2011 WL 2417016, at *3 (E.D.N.C. June 13, 2011). Immediately preceding this sentence, however, the Court also noted that a plaintiff must allege "substantial aggravating circumstances attending the breach to recover under the [UDTPA]." Id. (citing Eastover Ridge, L.L.C. v. Metric Constructors, Inc., 139 N.C. App. 360, 367-68 (2000)). Such circumstances exist where the conduct in question "possessed the tendency or capacity to mislead,

or created the likelihood of deception." Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 534-535 (4th Cir. 1989) (citing Chastain v. Wall, 78 N.C. App. 350 (1985)).

Here, Plaintiffs allege that Defendant engaged in deceptive conduct extending beyond a mere breach of contract. Plaintiffs allege that Defendant made false and misleading statements regarding long-term helium shortages; "fraudulently" billed HABAA for unused helium rental equipment; and "deceptively gained HABAA's confidential pricing and client list information" in order to "destroy Plaintiff economically." (Doc. No. 33, p. 20).

The conduct alleged by Plaintiffs is consistent with the characteristics of a UDTPA violation. Accordingly, Defendant's Motion to Dismiss Plaintiffs' claim under the North Carolina Unfair and Deceptive Trade Practices Act is DENIED.

**C. Tortious Interference with Contract**

Under North Carolina law, a claim for tortious interference with contract must allege the following: (1) a valid contract between the plaintiff and a third person exists; (2) the defendant knows of this contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) the defendant's acts were committed without justification; and (5) the plaintiff suffered actual damage. Barker v. Kimberly-Clark Corp., 524 S.E.2d 821, 826 (N.C. App. 2000).

Defendant contends that this claim should be dismissed because: (1) Plaintiffs failed to allege that Defendant acted "without justification;" (2) Plaintiffs fail to allege any customer breached a contract with Plaintiffs; and furthermore (3) this claim would be barred by the economic loss doctrine. (Doc. No. 29, p. 6-7). The Court considers and rejects each of these arguments in turn.

First, in order for this claim to survive, it "must admit of no motive for interference other than malice." Carter v. Ozoeneh, No. 3:08CV614-RJC-DSC, 2010 WL 890260, at *4 (W.D.N.C.

Mar. 8, 2010) (citing Privette v. Univ. of N.C., 385 S.E.2d 185, 190 (N.C. App 1989)). Here, Defendant points out that because HABAA is admittedly a "middle man," and reducing costs by eliminating a middle man is a legitimate business interest, Defendant's conduct was not "without justification." (Doc. No. 29, p. 11). However, as the Court in Carter stated, "While the defendants may indeed have a legitimate motive . . . the complaint does not admit this motive." Id. (holding that the plaintiff's complaint allowed the Court to draw a reasonable inference sufficient for the tortious interference with contract claim to survive a 12(b)(6) motion to dismiss). Similarly, while Airgas may have had a motive other than malice, Plaintiffs' complaint does not admit or allege such. Rather, the complaint alleges that Defendant's conduct was committed "without justification, with malice, and . . . served to effectively destroy and undermine many of the contracts between HABAA and its customers." (Doc. No. 27, p. 71).

Second, in order for this claim to survive, Plaintiffs must allege an actual interference with contractual rights. See TMM Data, LLC v. Braganza, 2015 WL 4617326, at *4 (E.D.N.C. July 31, 2015). A breach of contract, delay in performance, or otherwise failure to perform are all sufficient forms of interference. See id. Here, Plaintiffs allege such interference. The Amended Complaint states that Defendant induced twenty-three companies to end contracts and business relationships with HABAA. (Doc. No. 33, p. 14). In particular, the complaint alleges that "Airgas worked in conspiracy with CTI, the balloon manufacturer, to interfere with the HABAA/Food Lion contract." (Doc. No. 27, p. 42).

Lastly, under North Carolina's economic loss doctrine, a breach of contract does not ordinarily "give rise to a tort action by the promisee against the promisor." Severn Peanut Co. v. Indus. Fumigant Co., 807 F.3d 88, 94 (4th Cir. 2015) (quoting N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73 (1978)). More specifically, the doctrine prohibits recovery for

purely economic loss in tort when a contract operates to allocate risk. Id. North Carolina and federal courts have applied the economic loss doctrine to bar a variety of tort claims that "piggy back" breach of contract claims. See Akzo Noel Coatings, Inc. v. Rogers, 2011 NCBC 41, 2011 WL 5316772 (N.C.Super.Ct. Nov. 3, 2011). In this case, however, Plaintiffs raise no claim for breach of contract. Thus, no breach claim simultaneously encompasses the conduct underlying Plaintiffs' tort claims.

Based on these allegations, the Court finds Plaintiffs have stated a plausible claim for tortious interference with contract. Consequently, Defendant's Motion to Dismiss this claim is DENIED.

**D. Tortious Interference with Prospective Economic Advantage**

North Carolina courts require that a claim for wrongful interference with prospective economic advantage must allege facts to show that defendant acted "without justification in inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference." Walker v. Sloan, 137 N.C. App. 387, 393 (2000) (quoting Cameron v. New Hanover Memorial Hospital, 58 N.C. App. 414, 440 (1982)).

Defendant raises three arguments as to why this claim should fail. Identical to its arguments regarding tortious inference with contract, Defendant argues that the tortious interference with prospective economic advantage claim fails because: (1) Plaintiffs fail to allege that Defendant acted "without justification," and (2) the claim would be barred by the economic loss doctrine. The Court rejects both of these arguments for reasons already discussed above. The Court also rejects Defendant's third contention, that (3) Plaintiffs fail to allege a single contract that Plaintiffs would have consummated with a third party but for Airgas's alleged conduct.

The North Carolina Supreme Court in Dalton v. Camp held that an expectation of a continuing business relationship is insufficient to support a claim for tortious interference with prospective economic advantage in the absence of evidence showing that "but for" the defendant's alleged interference the contract would have ensued. Dalton v. Camp, 353 N.C. 647, 655 (2001). However, in Dalton, the Court pointed to circumstances outside of the alleged interference that accounted for the termination of the business relationship. Id. Such is not the case here. In particular, Plaintiffs specifically allege that "but-for" Defendant's improper use of confidential information and fabricated stories "to drive a wedge between the HABAA/Food Lion contractual relationship," HABAA's longstanding relationship with Food Lion would have continued. (Doc. No. 27, p. 42).

Accordingly, Defendant's Motion to Dismiss Plaintiffs' claim for tortious interference with prospective economic advantage is DENIED.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motions to Dismiss Plaintiffs' Amended Complaint (Doc. Nos. 28 and 31) pursuant to Rule 12(b)(6) is DENIED. The Court finds that Plaintiffs' Amended Complaint (Doc. No. 27) pleads facts sufficient to "raise a right to relief above the speculative level" and to demonstrate that the claim is "plausible on its face," for all five claims of relief. Twombly, 550 U.S. at 570. Consequently, a preliminary hearing is unnecessary; Defendant's Request for a Preliminary Hearing is DENIED.

IT IS SO ORDERED.

Signed: October 2, 2017

Frank D. Whitney
Chief United States District Judge